IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

SEAN GALLMAN, et al.,  \*
   Plaintiffs, \*
                     \*
  v.                \*
               \*   Civil Action No. AW-11-2750
SOVEREIGN EQUITY GROUP, INC., \*
et al.,           \*
   Defendants.    \*
               \*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Memorandum Opinion**

The matters before the Court are Plaintiffs' Motions for Default Judgment against Defendants James E. Tyson, Jr., Victoria Hunt, and Prestige Capital Advisors, LLC as successor to Sovereign Equity Group, Inc. Doc. Nos. 11, 34. The Court has reviewed the motion papers and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2010). Plaintiffs' motions will be granted for the reasons articulated below.

## I.   FACTUAL & PROCEDURAL BACKGROUND

The following facts are drawn from the Complaint and its attached documents. This action arises out of an investment relationship between Plaintiffs Ventura Investments, Inc. ("Ventura"), Sean Gallman ("Gallman"), Ventura as assignee of Carolyn Tate ("Tate"), Iris Alsop ("I. Alsop"), Adrienne Alsop ("A. Alsop"), Serena Parrish ("Parrish"), and Sidney Jennings ("Jennings"); and Defendants Prestige Capital Advisors, LLC ("Prestige") as successor of Sovereign Equity Group, Inc. ("Sovereign"), Nicole Stallworth ("Stallworth"), the Stallworth Firm, James E. Tyson, Jr. ("Tyson"), Victoria Hunt ("Hunt"), and Vonetta Barnes ("Barnes"). On March 21, 2012, the Court dismissed Defendants Stallworth and The Stallworth Firm for lack

of personal jurisdiction. Stallworth served as attorney for Defendants Tyson, Hunt, and Barnes, who were in the business of soliciting funds from individuals and entities and investing those funds with their corporation, Sovereign. Sovereign was a Delaware corporation that is now operating as Prestige, a Delaware limited liability company that maintains its principal office in Charlotte, North Carolina. Defendants Tyson and Hunt are North Carolina residents. Tyson served as CEO of Sovereign, while Hunt served as president and Barnes served as vice president.

The Plaintiffs in this action invested in Sovereign. Plaintiff Ventura is a Maryland corporation that maintains an office in Maryland. Plaintiffs Gallman, Parrish, and Jennings are also Maryland residents. Plaintiffs I. Alsop and A. Alsop are residents of the District of Columbia. The Court understands that Plaintiff Gallman is the President of Ventura and was promised a consulting fee by Hunt for helping to procure individuals or entities to invest with Sovereign.

During August 2008, Plaintiff Gallman engaged in discussions with Defendants Tyson and Hunt about providing Sovereign with investment funds to manage. Tyson and Hunt told Gallman that Sovereign investments were currently yielding 20-to-30 percent returns, and if Gallman provided Sovereign with funds to invest, investors would be guaranteed to receive their initial investments back in addition to investment proceeds ranging from 20-to-30 percent yearly, with payouts every 30 days.

A few weeks later, Gallman arranged to meet with Stallworth in New York City. During the meeting, Stallworth told Gallman that Sovereign was "doing good things" and explained that Gallman would transfer his investment funds to her directly and that the funds would be held in the Stallworth Firm's escrow account. Accordingly, Stallworth created the Stallworth Firm in order to set up the transactions for her clients Tyson, Hunt, and Barnes.

Subsequently, the Court understands that Gallman relayed the investment opportunity to the other Plaintiffs, who then entered into investment contracts with Sovereign. Defendant Hunt confirmed with Gallman by e-mail on August 13, 2008 that Sovereign would return each investor's principal amount with interest at 15% and that Gallman would receive a $125,000-to-$150,000 consulting fee.

Plaintiffs have provided evidence as to all the financial investments they made with Sovereign. The facts relating to each Plaintiff are as follows. A. Alsop entered into an investment contract with Sovereign on September 5, 2008 in which A. Alsop agreed to invest $25,000. Doc. No. 1 Ex. 1 at 1. On November 7, 2008, upon being told that she had earned proceeds of $1,715 on her investment, A. Alsop executed an addendum agreeing to reinvest her initial $25,000 in addition to the $1,715 proceeds, for a total of $26,750. Doc. No. 1 Ex. 3. The addendum provides that if A. Alsop "decides to terminate the Investment Agreement prior to the expiration of the one (1) year term, the investor will receive its Investment Funds and any Investment Proceeds earned during the next thirty (30) day payout after the Escrow Agent has received the Investor's written request to terminate the Investor Agreement." *Id.* at 2.

I. Alsop similarly invested $25,000 with Sovereign on September 5, 2008 and signed an escrow agreement. Doc. No. 1 Exs. 4, 5. On November 7, 2008, I. Alsop agreed to reinvest her initial $25,000, as well as an additional $25,000 and proceeds claimed to be earned of $1,715. Doc. No. 1 Ex. 6. The terms of the addendum are the same as those described in the A. Alsop contract. *See id.* at 2. Accordingly, I. Alsop invested a total of $51,715 with Sovereign.

Plaintiffs Jennings and Parrish also invested $25,000 each with Sovereign, Jennings on September 10, 2008, and Parrish on November 5, 2008. Doc. No. 1 Exs. 14, 16.

Plaintiff Tate invested an initial $24,500 with Sovereign on September 5, 2008, and subsequently signed an addendum agreeing to reinvest her original investment along with an additional $15,000 and proceeds claimed to be earned of $1,715. Doc. No. 1 Exs. 7–9. Accordingly, Tate invested a total of $41,215 with Sovereign.

Plaintiff Ventura invested an initial $51,485 with Sovereign and subsequently invested proceeds allegedly earned on its investment of $40,000. Doc. No. 1 Ex. 13. Subsequently, Sovereign remitted $35,500 to Ventura. Compl. ¶ 61.

Altogether, it appears Plaintiffs invested a total of $261,165 with Sovereign, including amounts allegedly earned on in their initial investments, and that Sovereign remitted $35,500, for a total of $225,665. Additionally, Hunt confirmed with Gallman that "your investors will get the principal amount loaned the Sovereign Equity Group returned with 15% interest." Doc. No. 1 Ex. 10. Pursuant to this guarantee, Plaintiffs contend they are owed an additional $29,174.75. Gallman also seeks $125,000 based on the consulting fee agreement. *Id.*

By February 23, 2009, it became clear that Defendants would not remit any of Plaintiffs' investment money per the parties' contracts. Plaintiffs demanded payment first from Barnes, Tyson, Hunt, and Sovereign, and then from Stallworth, but no Defendant responded.

Plaintiffs brought this action on September 24, 2011, alleging breach of investment and consulting fee contracts against Prestige, as successor of Sovereign, (Counts I and II), and violation of 15 U.S.C. § 77l(a)(2) for misleading communications (Count III), fraud (Count IV), and civil conspiracy (Count V) against all Defendants. Defendant Prestige was served with process on November 8, 2011 and has not made an appearance in this action to date. The Clerk of the Court entered Default as to Prestige and Sovereign on December 13, 2011. Subsequently, Plaintiffs served Defendants Hunt and Tyson by publication in North Carolina in March, 2012.

Defendants filed no responsive pleading, and default was entered accordingly. One Defendant, Barnes, has made an appearance and filed a motion to dismiss for lack of personal jurisdiction.

Given the Court's interests in expeditiously handling this matter, and the unusual length of time it has held off on addressing Plaintiffs' December 27, 2011 motion due to numerous service of process and personal jurisdiction issues that have waylaid this action, the Court will address Plaintiffs' motions for default judgment now. The Court notes, however, that Defendant Barnes, who has made an appearance in this case, will be given a full opportunity to litigate Plaintiffs' claims on the merits and will not face issues of collateral estoppel as a result of the Court's default judgments against Defendants Prestige, Tyson, and Hunt. *See Gelzer v. Smith*, Civ. No. 11–cv–02728–AW, 2012 WL 1118218, at *3 (D. Md. Apr. 2, 2012) (discussing "federal courts' hesitancy to apply collateral estoppel to default judgments").

## II.    STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 55(b)(1), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002). The Fourth Circuit has a "strong policy" that "cases be decided on the merits," *Dow*, 232 F. Supp. 2d at 494 (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), but default judgment may be appropriate where a party is unresponsive. *See S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

Upon entry of default, the well-pled allegations in a complaint as to liability are taken as true, but the allegations as to damages are not. *Lawbaugh*, 359 F. Supp. 2d at 422. Federal Rule of Civil Procedure 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Thus, where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount. "[C]ourts have generally held that a default judgment cannot award additional damages ... because the defendant could not reasonably have expected that his damages would exceed that amount. *In re Genesys Data Tech., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). Where a complaint does not specify an amount, "the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (citing *S.E.C. v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981)).

While the court may hold a hearing to prove damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins*, 180 F. Supp. 2d at 17 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)); *see also Laborers' Dist. Council Pension v. E.G.S., Inc.*, Civ. No. WDQ-09-3174, 2010 WL 1568595, at *3 (D. Md. Apr.16, 2010) ("on default judgment, the Court may only award damages without a hearing if the record supports the damages requested").

### III. ANALYSIS

#### A. Liability for Count I: Breach of Investment Contracts

Plaintiffs claim that Prestige, successor of Sovereign, is liable for breach of the investment contracts signed with Plaintiffs Ventura, Tate, A. Alsop, I. Alsop, Jennings, and

Parrish. Compl. ¶¶ 89–100. "A breach of contract is a failure without legal excuse to perform any promise which forms the whole or part of a contract." *See, e.g.*, *Haley v. Corcoran*, Civ. No. WDQ–09–1338, 2010 WL 4117267, at *7 (D. Md. Oct. 20, 2010) (quotation and citations omitted). "A contract exists where there is 'mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration.'" *Id.* (quoting *CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004)).

Here, Plaintiffs have provided copies of the investment contracts which show that in return for Plaintiffs' investments, Sovereign agreed to make payments to Plaintiffs every thirty days. *See* Doc. No. 1 Exs. 1, 4, 7, 11, 14, 16. Further, Plaintiffs have provided copies of addendums to the investment contracts whereby, in return for Plaintiffs' reinvestment in Sovereign, Sovereign promised to return all initial investments and any investment proceeds during the next thirty-day payout if Plaintiffs decided to terminate the contracts at any point. *See* Doc. No. 1 Exs. 2, 6, 9, 13. Plaintiffs allege that Prestige, who inherited the investment contracts from Sovereign, has failed to return Plaintiffs' initial investments or investment proceeds within 30 days of Plaintiffs terminating their contracts. Compl. ¶ 96. Therefore, based on Plaintiffs' well-pleaded factual allegations, Prestige is liable to Plaintiffs for breach of the investment contracts, and default judgment is proper on Count I.

  B. <u>Liability for Count II: Breach of Consulting Fee Contract</u>

Additionally, Plaintiffs Gallman and Ventura claim that Prestige is liable for breach of a consulting fee agreement of $125,000. Compl. ¶¶ 101–106. Plaintiffs have demonstrated the existence of the agreement sufficiently based on their allegations as well as a confirmation e-mail sent from Hunt, Sovereign's CEO, to Gallman. *See* Doc. No. 1 Ex. 10. Titled "Compensation," the August 13, 2008 e-mail provides that "[b]ased on our conversation, the agreement will be

that ... [t]he consulting feel for Sean Gallman will be between $125,000-$150,000." *Id.* As consideration for the consulting fee, it appears that Ventura invested $91,485 on behalf of Gallman. Although the price of the consulting fee does not appear to be firmly set in the e-mail, Plaintiffs' allegation that the parties agreed upon a sum of $125,000 appears to be supported by the e-mail. Compl. ¶ 102. Plaintiffs allege that neither Sovereign nor Prestige paid Gallman and Ventura the consulting fee as promised. Compl. ¶ 105. As such, based on Plaintiffs' well-pleaded factual allegations, Prestige is liable to Plaintiffs for breach of the consulting fee agreement, and default judgment is proper on Count II.

    C.    <u>Liability for Count III: Violation of 15 U.S.C. § 77l(a)(2) for Misleading Communications</u>

Plaintiffs claim a violation of § 12(a)(2) of the Securities Act of 1933, 15 U.S.C. §77l(a)(2), by Tyson, Hunt, and Prestige, as successor of Sovereign. Section 12(a)(2) of the Securities Act grants buyers an express cause of action for rescission against sellers who make material misstatements or omissions "by means of a prospectus." 15 U.S.C. §77l(a)(2). The word 'prospectus' is a term of art referring to a document that invites a public offering of securities by an issuer or controlling shareholder. *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 584 (1995).

"Under § 12(a)(2), standing is limited to those persons who purchased securities pursuant to public offerings made via a prospectus, and does not extend to individuals who purchased securities under private sales contracts." *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 401 (D. Md. 2004) (citing *Gustafson*, 513 U.S. at 580–84). Because Plaintiffs do not allege that Defendants attempted to sell securities to them via a prospectus or pursuant to a registered offering, Plaintiffs lack standing to bring a § 12(a)(2) claim, and default judgment as to Count III is accordingly denied. *See Faye L. Roth Revocable Trust v. UBS Painewebber, Inc.*,

323 F. Supp. 2d 1279, 1288 (S. D. Fla. 2004) (section 12(a)(2) does not apply to unregistered offerings).

> D.   Liability for Count IV: Fraud

Plaintiffs contend that Tyson, Hunt, and Prestige are liable for fraud. To prevail in an action for fraud in Maryland, a plaintiff must demonstrate: (1) that the defendant made a false representation to the plaintiff; (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation. *Steigerwald v. Bradley*, 229 F. Supp. 2d 445, 451 (D. Md. 2002).

According to Plaintiffs, Tyson and Hunt, on behalf of Sovereign, made false representations to Gallman during an August, 2008 meeting that "if Gallman provided Sovereign with funds to invest, he would be guaranteed to receive his initial investment back, in addition to investment proceeds ranging from twenty to thirty percent yearly, with payouts every thirty days." Compl. ¶ 20. Tyson and Hunt also falsely represented to Gallman during that meeting that Sovereign's investments were currently yielding 20-to-30 percent returns. Compl. ¶ 111. Plaintiffs contend that Defendants knew at the time of the meeting that Sovereign's investments were not currently yielding such returns, and that Defendants had no intention of returning and have since not returned Plaintiffs' investments.

Plaintiffs seek to hold Tyson and Hunt personally liable for the fraud allegedly perpetrated by them in their capacities as CEO and President of Sovereign. In Maryland, "corporate officers or agents are personally liable for those torts which they personally commit ...

even though performed in the name of an artificial body." *Tedrow v. Deskin*, 290 A.2d 799, 802 (Md. 1972). An officer will be held personally responsible if he "personally directed or actively participated or cooperated in the tort committed by the corporation." *Shipley v. Perlberg*, 780 A.2d 396, 401 (2001) (quoting *Fletcher v. Havre De Grace Fireworks Co.*, 177 A.2d 908 (Md. 1962)). Assuming the truth of the facts alleged in the Complaint, Plaintiffs have met their burden with regard to Tyson and Hunt. First, Plaintiffs justifiably relied on Tyson and Hunt's false representations about the financial success of Sovereign and guarantees about returns on investments, since these were material factors in Plaintiffs' decisions to invest with Sovereign. Additionally, Plaintiffs suffered $254,839.75 in damages, which represents the investment sums which have been lost in reliance on Defendants' statements. Accordingly, the facts alleged are sufficient to establish fraud by Tyson and Hunt on behalf of Sovereign, and default judgment is proper on Count IV.

  E. <u>Liability for Count V: Civil Conspiracy</u>

Plaintiffs' final claim is that Defendants are liable for civil conspiracy to commit fraud on Plaintiffs. Compl. ¶¶ 139–43. To establish a prima facie case of civil conspiracy in Maryland, a plaintiff must show: (1) an agreement between two or more people; (2) some unlawful act done in furtherance of the conspiracy; and (3) damages. *Van Royen v. Lacey*, 277 A.2d 13, 14 (Md. 1971). "The more specific requirements for an allegation of conspiracy are that the pleader provide, whenever possible, some details of the time, place and alleged effect of the conspiracy." *Nat'l Constructors Ass'n v. Nat'l Elec. Contractors Ass'n, Inc.*, 498 F. Supp. 510, 528 (D. Md. 1980) (internal citations and quotations omitted); *see also Waller v. Butkovich*, 584 F. Supp. 909, 931 (M.D.N.C. 1984) ("Plaintiffs must expressly allege an agreement or make averments of

'communication, consultation, cooperation, or command' from which such an agreement can be inferred.") (citing *Weathers v. Ebert*, 505 F.2d 514, 517 (4th Cir. 1974)).

Here, Plaintiffs have failed to abide by Rule 9(b)'s particularity requirements in stating a claim for civil conspiracy.  Plaintiffs allege that Defendants "had an agreement to obtain Plaintiffs' money and to deceive and commit fraud on the Plaintiffs."  Compl. ¶ 140.  Plaintiffs provide no further information about the agreement itself, including its time or place, or what Defendants specifically did to carry the conspiracy into effect.  Accordingly, based on the evidence before the Court, Tyson, Hunt and Prestige are not liable to Plaintiffs for civil conspiracy to commit fraud, and default judgment is denied as to Count V.

F.     Damages

As an initial matter, the Court notes that Plaintiffs request duplicative damages.  The "one wrong, one recovery" rule precludes a party from recovering twice for one injury.  *United States v. Rachel*, 289 F. Supp. 2d 688, 697 (D. Md. 2003).  "Pleading several different theories or causes of action does not ... transform a single injury into multiple injuries."  *Id.* (quoting *Kramer v. Emche*, 494 A.2d 225, 232 (Md. 1985)).  Here, Plaintiffs' claims all stem from the same offense: Defendants' alleged breach of their investment contracts and fraud related to that breach.  Plaintiffs cannot recover more than once for the damages incurred from Defendants' failure to honor their agreements.

Plaintiffs have submitted affidavits and copies of all relevant contracts, which establish compensatory damages of $254,839.75 based on the investment contracts and addendums.  In addition, Gallman has established damages of $125,000 based on the parties' consulting fee agreement.  The Court finds that the record fairly supports Plaintiffs' claims for damages and sees no need to hold a formal evidentiary hearing on this issue.  *See Pentech Fin, Servs., Inc. v.*

*Old Dominion Saw Works, Inc.*, Civ. No. 6:09cv00004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (no need to convene an evidentiary hearing where plaintiff provided sufficient evidence of damages).

Additionally, Plaintiffs seek punitive damages of $1 million for their fraud claims. In Maryland, a plaintiff may be awarded punitive damages only where there is a showing of actual malice. *Robinson v. Cutchin*, 140 F. Supp. 2d 488, 495 (D. Md. 2001). "Actual malice in this context refers to 'conscious and deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will or fraud.'" *Id.* (quoting *Montgomery Ward v. Wilson*, 664 A.2d 916 (Md. 1995)). Actual malice must be established by clear and convincing evidence. *See Pippin v. Potomac Elec. Power Co.*, 78 F. Supp. 2d 487, 494 (D. Md. 1999). Even if the evidence warrants punitive damages, whether to award such damages is left to the sound discretion of the trier of fact. *HBCU Pro Football, LLC v. New Vision Sports Properties, LLC*, No. WDQ–10–0467, 2011 WL 2038512, at *8 (D. Md. May 24, 2011).

In this case, the Court finds that Plaintiffs' fraud claim justifies an award of punitive damages against Tyson, Hunt, and Prestige, as successor of Sovereign, given Plaintiffs' allegations that Defendants intentionally misrepresented material facts about the financial status of Sovereign as well as certain investment terms, in order to induce Plaintiffs to invest with Sovereign. Plaintiffs' allegations that Defendants had no intention of returning their investments and have not in fact returned their investments additionally support a finding of deliberate wrongdoing and malicious intent. It appears that Plaintiffs, most of them individuals, have suffered sizeable losses as a result of Defendants' conduct. Moreover, it appears Defendants made little effort to honor the investment agreements, as they disappeared with all but $35,500 of Plaintiffs' investments and have failed to make any appearance in this case.

The amount of punitive damages to be awarded must bear a reasonable relationship to the amount of compensatory damages awarded. *Bowden v. Caldor, Inc.*, 710 A.2d 267, 276 (Md. 1998). With this consideration in mind, the Court believes a punitive damages award of $100,000 is appropriate in this case.[1]

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs' Motions for Default Judgment will be granted. A separate Order will follow.

May 14, 2012                                                              /s/
Date                                                                Alexander Williams, Jr.
                                                                    United States District Judge

---

[1] The Court notes that if Plaintiffs so choose, they may file a proposed Stipulation with the Court as to the portions of the Judgment to which they have agreed each Plaintiff is entitled.